## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
　　　　　　　　　　　　　　　　　　　)
**UNITED STATES OF AMERICA,** )
　　　　　　　　　　　　　　　　　　　)　　　**Criminal No. 13-30009-MAP**
　　　　**v.** 　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
**FRANCISCO DIAZ** 　　　　　　　　)
_____ )

### DEFENDANT'S SENTENING MEMORANDUM

Francisco Diaz, by and through his undersigned attorneys, hereby submits the following memorandum for the Court's consideration at his upcoming sentencing.

### Personal Background

As outlined in the Presentence Report, Francisco Manuel Diaz Rodriguez, Jr., was born in Arecibo, Puerto Rico.  Mr. Diaz, together with his mother, stepfather and siblings lived in Puerto Rico until the he was 12 years of age.  Mr. Diaz's family then relocated to Holyoke, Massachusetts. The family secured an apartment for approximately two years before moving to another apartment on South Canal Street in Holyoke where the defendant's mother remains to this day.  Mr. Diaz had good family relationships with his mother, stepfather and siblings, but barely knew his biological father.  The family lived on a meager income, and could afford only necessities.  His biological father did not provide any financial or emotional support to Mr. Diaz.

While still a teenager Mr. Diaz had a son, Francisco Diaz, with Sonya Quiles.  Mr. Diaz and Ms. Quiles lived together approximately three years before separating.  Defendant ultimately left the relationship, and his son was taken from Ms. Quiles and placed in foster care. Mr. Diaz fought for and gained custody of his son.  Once he was criminally charged, his sister offered to take legal custody of Francisco, and has done so.

In approximately 1998, following his separation from Ms. Quiles, Mr. Diaz returned

1

to his mother's South Canal Street, Holyoke, MA, apartment.  He resided in

his mother's apartment for approximately four years before relocating to Puerto Rico,

joining his biological father.  Their relationship was strained and Mr. Diaz returned to the United

States.

Mr. Diaz returned to Puerto Rico and his life stabilized when he married Wilma Albelo in

March 1992. The couple resided together in Puerto Rico before relocating to Western

Massachusetts.  They have two daughters: Nathalie Diaz, born in 2003, and Yeinalis Diaz,

born last year.  Ms. Albelo has a daughter, Yeriles Ortiz, age 14, from a previous

relationship.  Mr. Diaz has a close relationship with all of the children.

Significantly, Mr. Diaz suffers from uncontrolled epilepsy.  Records from Holyoke

Medical Center indicate that he has been treated in their emergency room on a number of

occasions for seizure disorder, as well as chronic otomastoiditis, and hyperglycemia.  He takes

Dilantin and other medications to control his epilepsy.   After being diagnosed with epilepsy

approximately six years ago, Mr. Diaz began receiving Social Security Disability Income.  He

has had seizure episodes during his pretrial and post-plea incarceration in this case.  He also

suffers from depression.

**Legal Analysis**

As the Supreme Court recently reaffirmed, "as a matter of administration and to secure

nationwide consistency, the [Sentencing] Guidelines [range] should be the starting point and the

initial benchmark." *Peugh v. United States*, 133 S.Ct. 2072, 2080 (2013), quoting *Gall v. United

States*, 552 U.S. 38, 49 (2007).  The Court must then consider the arguments of the parties and

the factors set forth in § 3553(a).  *Peugh*, 113 S. Ct. at 2080. The Court may not presume that the

guidelines range is reasonable.  *Id*.  The Court must explain the basis for its chosen sentence on

the record.  *Gall*, 552 U.S. at 50.  "[A] major departure [from the Guidelines] should be supported by a more significant justification than a minor one."  *Id.*

    In *United States v. Yonathan Rodriguez*, 527 F.3d 221 (1st Cir. 2008), the First Circuit stressed that the Supreme Court ruling in *Kimbrough v. United States*, 552 U.S. 85 (2007), requires a "more holistic inquiry" and that "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle."  527 F.3d at 228. That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the Court should "consider all the relevant factors" and "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Id*.  The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper v. United States*, 131 S. Ct. at 1229, 1242-43 (2011).

### Objections to Presentence Report

    1.  The government's submission makes much of Mr. Diaz's alleged gang affiliation.  But he is not charged with offenses that are unique to gang members, and there is insufficient evidence of gang affiliation for the Court to consider it for sentencing purposes.   There is no charge of conspiring with other gang members to distribute heroin, or to use the proceeds to support organized gang activity.  The evidence instead points to the conclusion that Mr. Diaz had insufficient income to support his family and that was his motivation for the transactions to which he pled guilty.  In this particular case, the Court should therefore focus on the offenses of conviction rather than the controvertible evidence of gang association.

2.  Although it may not affect Mr. Diaz's sentencing range, since the sentence will likely be driven by the firearms guideline, Probation has added a two-point role in offense adjustment (¶ 27) for Mr. Diaz's alleged supervision of Antonio Caraballo in the drug transactions. Defendant disagrees with this adjustment under U.S.S.G. § 3B1.1(c).

The only evidence for the enhancement in the Presentence Report is the conclusory statement in ¶ 9 that Caraballo worked for Diaz.  In fact, Caraballo was charged in No. 13-cr-30010-MAP with five entirely different heroin transactions, on different dates that the transactions charged in this case against Mr. Diaz.   Mr. Diaz is charged with transactions occurring on 8/29/12, 10/11/12, 10/26/12, 1/2/13 and 1/4/13.  Mr. Caraballo, on the other hand, was charged with transactions occurring on 8/17/12, 8/23/12, 12/20/12, 2/14/13 and 2/28/13. Were the two working together with Mr. Diaz in a leadership role, one would surely expect Mr. Diaz and Caraballo to be charged together in at least one transaction, or charged as coconspirators.  But this is not the case.

Nor do the video and audio recordings support the adjustment under Section 3B1.1(c). While the FBI attempted to make audio and video recordings of the five transactions with Mr. Diaz, the quality of these recordings is very low.  The cooperating witness apparently used a cell phone or other hand-held device to make the recordings.  As a result, the camera almost never focuses on one person or place.  The video is never still – and at times can induce motion sickness.  More often than not the camera is directed at the floor or the ceiling in whatever apartment the cooperating happened to be visiting.  And the cooperating witness routinely carried on conversations with several individuals at once, so the audio is invariably garbled.  In those rare instances when the camera came into focus, the cooperating witness was dealing with

Mr. Diaz directly.  In sum, there is insufficient evidence of supervision to justify the 2-point enhancement under Section 3B1.1(c).

### Nature and Circumstances of the Offenses

Mr. Diaz has admitted to five separate sales of heroin to an FBI cooperating witness, as well as to the possession of a firearm after having been convicted of a felony.  He does not dispute the seriousness of these offenses, sincerely regrets them, and is prepared to serve without complaint whatever sentence this Court should impose.  His sole focus at this time is to get his prison time behind him and turn his life around for good.

### History and Characteristics of the Defendant

As noted above, the defendant has tried, despite his serious and uncontrolled seizure disorder and lack of skills or income, to support his family.  There is no dispute that he made a poor decision in involving himself in the drug trade.  He will pay for that poor decision with many months behind bars.

Mr. Diaz has nevertheless attempted during his time in jail to put himself on a better path. He has taken full advantage of programs available to him at the Hampden County Jail, and as a result has earned certificates in the Transitional Program, Domestic Violence Education, Reducing Domestic Violence.  *See* Exhibit A.  Mr. Diaz has participated in the Workplace Essential Skills Training program and, upon his release, he plans to take full advantage of Hampden County Jail's support programs for ex-offenders seeking jobs.  He has assured the undersigned that he will diligently pursue his GED certificate while incarcerated.

Mr. Diaz has also received notable support from his family and friends.  Mr. Diaz's wife Wilma Albelo has been incredibly supportive of him while working a fulltime job as a home healthcare aide.  Her devotion to Mr. Diaz is reflected in her letter to the Court.  *See* Exhibit B.

Also attached are letters from Mr. Diaz's children.  His daughters Nathalie and Yeriles write of

how much they will miss him.  His son Francisco Diaz III wishes to rekindle his relationship

with Mr. Diaz.  It is apparent to the undersigned that incarceration has already been a life altering

experience for Mr. Diaz.  Needless to say, however, the longer he is incarcerated, the more

difficult it will be for him to transition back to life with his family.

## Adequate Deterrence to Criminal Conduct

Mr. Diaz acknowledges that a sentence imposed by this Court must be adequate to deter

criminal conduct.  It is become increasingly apparent to policymakers of all political

backgrounds that the draconian sentences imposed under the Sentencing Guidelines over the past

three decades have been far in excess of what is necessary to accomplish that purpose.  The

Attorney General has recognized that "[l]ong sentences for low-level non-violent drug offenses

do not promote public safety, deterrence and rehabilitation."  See August 12, 2013,

Memorandum from the Attorney General to the United States Attorneys and Assistant Attorney

General for the Criminal Division, p. 1.[1]  As noted by the First Circuit in *Rodriguez*, a sentence

must be sufficient, but not greater than necessary.  527 F. 3d at 228.

## Concurrent Sentences

Mr. Diaz is presently serving a three-year state sentence for firearms possession.  See

PSR ¶¶ 52-53.  Justice Ferrara recently issued an order making clear his intent that that sentence

should run concurrently with whatever sentence this Court imposes on the federal charges.  *See*

Exhibit C hereto.

---

[1] http://www.justice.gov/oip/docs/ag-memo-department-policypon-charging-mandatory-minimum-sentences-recidivist-enhancements-in-certain-drugcases.pdf

Mr. Diaz requests that this Court likewise order that his federal sentence on the charges in this case run concurrently with his present state sentence. "Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." *Setser v. United States*, 132 S. Ct. 1463, 1468 (2012). This is codified in 18 U.S.C. § 3584(a), which states that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . ." This Court should accordingly direct that the federal sentence in this case run concurrently with the state sentence imposed by Judge Ferrara.

WHEREFORE, for all of the above reasons, the defendant will request a downward departure from the sentencing guideline range, or in the alternative, a *Booker* variance, and a sentence "not greater than necessary" to meet the requirements of 18 U.S.C. § 3553(a).

Dated:  March 30, 2014                              Respectfully submitted,

                                                   */s/ Andrew Levchuk*
                                                   Andrew Levchuk
                                                   Counsel for Francisco Diaz
                                                   Bulkley Richardson and Gelinas, LLP
                                                   1500 Main Street, 27th floor
                                                   Springfield, MA  01115
                                                   413-272-6285
                                                   alevchuk@bulkley.com

CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2014, this document filed through the ECF system will be sent electronically upon all counsel of record.

Dated: March 30, 2014                    /s/ *Andrew Levchuk*
                                         Andrew Levchuk